James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

**Plaintiff, Pro Se**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES EVERETT SHELTON<br>316 Covered Bridge Road<br>King of Prussia, PA 19406<br><br>Plaintiff,<br><br>vs.<br><br>PIVOTAL PAYMENT SYSTEMS, INC. d/b/a<br>CAPITAL PROCESSING NETWORK and CPN<br>5000 Legacy Drive, Suite 320<br>Plano, TX 75024<br><br>BRUCE BREUNIG, Jr. d/b/a Swipe for Zero<br>518 Route US 9 S,<br>Marmora, New Jersey 08223<br>                   Defendants | Civil Action<br><br>No. _____<br><br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

## COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. § 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of PIVOTAL PAYMENT SYSTEMS, INC. d/b/a CAPITAL PROCESSING NETWORK and CPN (hereinafter "Pivotal") and BRUCE BREUNIG, Jr. (hereinafter "BREUNIG"), in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Call") using an automatic telephone dialing system ("RoboCall") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form

1

part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I. Introduction

1. Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Plaintiff brings this action to challenge PIVOTAL's and BREUNIG's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges BREUNIG and PIVOTAL's agents' illegal telephone solicitations by which it markets its products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and BREUNIG's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5. Plaintiff alleges that Defendant BRUCE BREUNING, Jr. commissioned a prerecorded robocall to Plaintiff's cellular telephone number for the purposes of advertising and/or selling PIVOTAL PAYMENT SYSTEMS, INC. d/b/a CAPITAL PROCESSING NETWORK LLC's

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

2

credit card merchant processing services. The prerecorded call used an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6. Plaintiff never consented to receive this Robocall from Defendants.

7. All of the claims asserted herein arise out of PIVOTAL's and BREUNIG's illegal telephone solicitation campaign and are a common fact pattern.

## II. Jurisdiction and Venue

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this court in that Defendants conduct business in New Jersey. Defendant PIVOTAL is registered to do business in New Jersey. Defendant BREUNIG is a New Jersey resident. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this State.

## III. Parties

10. Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11. Defendant PIVOTAL CAPITAL LLC ("PIVOTAL") is a limited liability company based in Toronto, Canada, with a head office located at 5000 Legacy Drive, Suite 320, Plano, Texas 75024. PIVOTAL transacts business and is registered to do business in the State of New Jersey. PIVOTAL markets and sells, *inter alia*, credit card and merchant processing services to people and businesses in North America.

12. Defendant BRUCE BREUNIG, Jr. is an adult individual and citizen of the State of New Jersey, and is the owner and proprietor of the fictitious DBA "Swipe for Zero". Upon information

and belief, BREUNIG may be served at either 105 Wygate Dr, Egg Harbor Township, New Jersey 08234 or 518 Route US 9 S., Marmora, New Jersey 08223.

13. At all times herein mentioned, PIVOTAL & BREUNIG (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## Background
### The Telephone Consumer Protection Act

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing …

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

19. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number

the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

20. Under the TCPA, an individual such as BREUNIG may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 227 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 227 (emphasis added).

21. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g.*, *Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

22. Defendant BREUNIG is personally liable under the "participation theory" of liability because he was not acting under a corporate name, entity, or structure; rather, he was apparently doing business as "Swipe For Zero", which does not appear to be a real corporate entity of any kind.

23. Defendant BREUNIG authorized and oversaw each of the telemarketing processes and calls made by "Swipe for Zero" on behalf of PIVOTAL.

24. Defendant BREUNIG personally participated in the telemarketing call as alleged herein.

25. Furthermore, Defendant BREUNIG is also personally liable because he was responsible for ensuring TCPA compliance.

### IV.    Factual Allegations

26. BREUNIG purports to provide credit card merchant processing services at lower, more preferential rates, operating under the name "Swipe for Zero".

27. BREUNIG uses telemarketing to promote his services, on behalf of PIVOTAL.

28. BREUNIG's telemarketing efforts include calling cell phone numbers that are listed on the National Do-Not-Call registry.

29. At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

30. Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

31. On October 2, 2017 at 3:00 PM Plaintiff received a prerecorded, automated robocall from a telephone number which displayed on Plaintiff's caller ID as (805) 852-0277. Plaintiff received this call on his personal cellular telephone number, 484-626-3942.

32. Plaintiff answered the phone and said "hello" repeatedly into the phone. After a few seconds, Plaintiff heard a prerecorded telemarketing message about how he could get lower credit card merchant processing fees.

33. Plaintiff pressed "1" on his phone at the direction of the prerecorded message, which had the effect of transferring the call to a live human being, "Bruce Breunig, Jr."

34. Plaintiff then received a scripted sales pitch about getting better credit card merchant processing rates from Mr. Breunig.

35. During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information.

36. As a result of this telemarketing call, "Bruce Breunig, Jr." sent Plaintiff an e-mail from bruceb@swipeforzero.com at 3:07 PM on October 2, 2017, trying to get Plaintiff to do business with BREUNIG and PIVOTAL.

37. Attached to the e-mail was a flyer advertising "Swipe for Zero". At the bottom of the flyer, it said "All merchant accounts referred to and processing services provided by Pivotal Payments, a registered ISO/MSP of Wells Fargo Bank".

38. Prior to filing this lawsuit, Plaintiff requested that BREUNIG put Plaintiff on his Do-Not-Call list and provide Plaintiff with a copy of BREUNIG's Do-Not-Call policy.

39. BREUNIG failed and/or refused to put Plaintiff's number on the Do-Not-Call list and failed and/or refused to provide Plaintiff with a copy of BREUNIG's Do-Not-Call policy.

40. Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

41. Pursuant to 47 CFR 64.1200, a telemarketer is required, upon request, to put a person's phone number on the internal "Do-Not-Call list".

42. At no time did Plaintiff provide his consent to receive any calls from BREUNIG, PIVOTAL, and/or their agents.

43. Prior to these unsolicited calls, the Plaintiff has never done any business with PIVOTAL or BREUNIG and Plaintiff never provided BREUNIG or PIVOTAL with his cellular telephone number.

44. BREUNIG and/or PIVOTAL did not have the Plaintiff's prior express written consent to make these calls.

45. In fact, before filing this lawsuit, the Plaintiff wrote to BREUNIG asking if he had his prior express written consent to make the calls, but BREUNIG did not provide any evidence of consent.

46. Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

### PIVOTAL PAYMENT'S Liability and its Arrangement with BREUNIG

47. Defendants are each a "person," as defined by 47 U.S.C. § 153(39).

48. For more than 20 years, the Federal Communication Commission has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

49. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.*

50. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

51. On May 9, 2013, the FCC released a Declaratory Ruling reiterating that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[2]

52. In that Order, the FCC instructed that sellers such as PIVOTAL may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

53. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

---

[2] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

54. BRUCE BREUNIG, Jr. d/b/a Swipe for Zero made or commissioned telemarketing calls described herein "on behalf of" PIVOTAL within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

55. In fact, the telemarketing call made to Plaintiff led to an e-mail which said that "All merchant accounts referred to and processing services provided by Pivotal Payments", which means that PIVOTAL was undoubtedly aware that they were benefitting or profiting as a result of these illegal telemarketing calls essentially made on their behalf by a third-party agent, BRUCE BREUNIG, Jr.

56. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

57. By engaging BRUCE BREUNIG, Jr. d/b/a Swipe for Zero to make calls on behalf of its agents to generate new business, PIVOTAL "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the

11

Restatement (Third) of Agency. Similarly, by accepting these contacts, BRUCE BREUNIG, Jr. d/b/a Swipe for Zero "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of PIVOTAL, as described in the Restatement (Third) of Agency.

58. PIVOTAL is vicariously liable for the BREUNIG telemarketing call because it actively participated in those calls through guidelines it directed BREUNIG to follow for generating new business.

59. PIVOTAL is also vicariously liable for the BREUNIG telemarketing call because it actively participated in the calls by "allow[ing] the outside sales entity access to information and systems that normally would be within the seller's exclusive control", when PIVOTAL allowed BREUNIG access to refer customers to its exclusive system for its credit card merchant processing services.

60. PIVOTAL maintains interim control over its agents' actions, both as to telemarketing and other activities by directing the content of their agents' advertising as well as approving the scripting that is used.

61. PIVOTAL knew (or reasonably should have known) that BREUNIG was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing leads would, and indeed *must*, investigate to ensure that those calls were made in compliance with the National Do Not Call Registry rules and regulations.

62. By engaging BREUNIG to make calls on behalf of PIVOTAL to generate new business, and by accepting the benefits of the resulting sales of PIVOTAL products and services, PIVOTAL thereby ratified the use of unlawful calls as alleged in this case.

63. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

64. PIVOTAL essentially hired or worked with BREUNIG to break the law on its behalf, to sell PIVOTALS's products or services, and to attempt to shield PIVOTAL from TCPA liability.

65. Unfortunately, this is not the first time that PIVOTAL has been sued for TCPA violations. According to pivotaltcpa.com, "A settlement has been reached in a class action lawsuit, *Abante Rooter and Plumbing, Inc. et al. v. Pivotal Payments, Inc., d/b/a Capital Processing Network and CPN.* No. 3:16-cv-05486-JCS (U.S. District Court N.D.Cal.), where Plaintiff alleges that EPLJ and/or Gordon Rose made calls to cell phones using prerecorded messages in order to sell goods and/or services on behalf of Pivotal." Pivotal agreed to settle that lawsuit for $9 Million.

66. Although the facts and circumstances of *Abante* are different than the instant suit, Plaintiff has personally opted out of the *Abante* class settlement to avoid any confusion.

67. To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on

national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted BREUNIG inquiring about the calls before filing this lawsuit.

68. Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

69. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

70. Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

### Causes Of Action

### First Cause of Action – PIVOTAL & BREUNIG

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

71. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

72.     As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

73.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action – PIVOTAL & BREUNIG

(Knowing and/or Willful Violation of the TCPA
"RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

74.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

75.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

76.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action –

### JAMES EVERETT SHELTON v. BRUCE BREUNIG, Jr.

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

77.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

78.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Fourth Cause of Action

### JAMES EVERETT SHELTON v. BRUCE BREUNIG, Jr.

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

79.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

80.    As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Fifth Cause of Action

### JAMES EVERETT SHELTON v. BRUCE BREUNIG, Jr.

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

81.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

82.    As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

### JAMES EVERETT SHELTON v. BRUCE BREUNIG, Jr.

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

83.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

84.    As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### WHEREFORE, Plaintiff prays for relief against defendants, as follows:
### V.   Prayer for Relief

On Causes of Action 1-6:

1. For awards of $500 for each negligent violation as set forth in actions 1-6.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-6.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages against PIVOTAL: **$1,500** (One count of "RoboCall").

Total statutory damages against BREUNIG: **$4,500** (One count each of "RoboCall", "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

### VI.   Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 30, 2018                                                              *James E Shelton*

James Everett Shelton<br>
*Plaintiff, Pro Se*<br>
316 Covered Bridge Road<br>
King of Prussia, PA 19406<br>
Phone: 484-626-3942<br>
Jeshelton595@gmail.com